FILED

2006 Feb-28  AM 08:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ALESIA CORK, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] CV-04-CO-03017-W |
| | ] |
| MARRIOTT INTERNATIONAL, INC., *et al.*, | ] |
| | ] |
| | ] |
| Defendants. | ] |

MEMORANDUM OPINION

I.    Introduction.

The Court has for consideration defendants Marriott International, Inc.

("Marriott") and ExecuStay Corporation's ("ExecuStay") motion for summary

judgment, which was filed on October 17, 2005.  (Doc. 20.)  Plaintiff Alesia

Cork ("Ms. Cork") filed suit against Defendants in the Circuit Court of

Tuscaloosa County, Alabama, on September 10, 2004, alleging a variety of

state law claims arising out of alleged misrepresentations Defendants made

in order to induce her to leave her job with State Farm and accept a position

at ExecuStay.  (Doc. 1.)   The issues raised in Defendants' motion for

summary judgment are now ripe for decision.  Upon full consideration of the

legal arguments and evidence presented, Defendants' motion is due to be

granted in all respects.

II.    Facts.[1]

ExecuStay is a wholly owned subsidiary of Marriott International, Inc.,

and offers corporate and temporary housing accommodations throughout the

United States.  (Doc. 23, p. 1.)  The company is comprised of two distinct

operating groups.  *Id*. at 2.  The first, Corporate Housing Solutions ("CHS"),

markets principally to companies and business travelers who have extended

lodging needs.  *Id*.  The second, Insurance Housing Solutions ("IHS"),

markets principally to insurance companies.  *Id*.  Most of IHS's business

comes from providing insurance carriers temporary housing for their

displaced insureds under the additional living expense provisions of the

carrier's insurance policies.  *Id*.  In the Spring of 2002, ExecuStay saw an

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, and the
Court's own examination of the evidentiary record.  All reasonable doubts about the
facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks
Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for
summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r
U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

opportunity to capture additional business by targeting insurance carriers'
needs for adjustor and insured housing in the aftermath of large national
catastrophes.  *Id*.

ExecuStay decided to create a new position, National Catastrophe
("Nat Cat") Manager.  *Id*.  The Nat Cat Manager would seek out national
catastrophe housing business.  *Id*. at 2-3.  The position was developed
principally by Joe Novia, Vice President of ExecuStay Insurance Housing
Solutions, and Kelly Johnson, ExecuStay's National Director of Sales.  *Id*. at
3.  Mr. Novia anticipated that the principal responsibility of the Nat Cat
Manager would be to secure national preferred vendor contracts with large
insurance carriers to use ExecuStay when they needed catastrophe housing.
*Id*.  Mr. Novia initially considered several current ExecuStay employees for
the Nat Cat Manager's job, but none of those individuals were hired for the
position.

In early 2002, Ms. Cork was employed by State Farm as a claims
adjustor.  *Id*. at 3.  She had worked for State Farm since 1992, after
graduating from Northeast Louisiana University in 1988 and receiving a
masters degree in social work from the University of Alabama in 1992.  *Id*.

at 3-4.  Ms. Cork worked on State Farm's national catastrophe team.  By the Spring of 2002, she was keeping her eyes and ears open for a new position, specifically in sales.  *Id*. at 4.  Plaintiff thought that she could advance her career by taking a position in sales "where there was some type of bonus commission, you know, where you can earn money above and beyond what your base salary was."  (Doc. 21, Pl.'s Depo., pp. 177, 185.)  While still at State Farm, Ms. Cork applied to a couple of pharmaceutical companies for sales positions, and in 2001 she applied and interviewed with ExecuStay's CHS side but was not selected for the position.  (Doc. 23, p. 4.)

Ms. Cork found out about the Nat Cat Manager's position through a friend of hers, Sophie Duquette, an Account Executive at ExecuStay and former State Farm employee.  *Id*. at 5.  Ms. Duquette gave Plaintiff's information to Mr. Novia, and on May 7, 2002, Plaintiff called Mr. Novia to inquire about the position.  *Id*.  During the call, Mr. Novia and Ms. Cork scheduled an interview for May 20, 2002, at ExecuStay's Birmingham, Alabama, office.  *Id*.  Ms. Cork followed the phone call with a letter, dated May 8, 2002, in which she stated that she had: "exposure to numerous facets of the insurance claims environment;" "extensive experience in all aspects

of property/casualty claims and temporary housing arrangements;" an "ability to establish and maintain effective communication and rapport with peers, clients, and management;" and "experience and education [providing] a solid base and broad understanding of the insurance industry and temporary housing operations and practices." *Id*. at 6.  (*See also* Doc. 21, Pl.'s Depo., Exhibit 4.)

Mr. Novia interviewed Ms. Cork on May 20, 2002, and he explained that if Ms. Cork were to get the Nat Cat Manager position she would need to focus her efforts on national insurance companies. *Id*. at 6.  She understood from the interview that the position was new and that her primary responsibility was to secure national catastrophe preferred vendor contracts from the twelve largest insurance companies. *Id*. at 6-7.  Plaintiff stated at her deposition that she was fraudulently induced to leave her job at State Farm because she relied, to her detriment, on various misrepresentations and suppressions made by Mr. Novia during the May 20, 2002, interview. *Id*. at 7.  At the conclusion of the interview, Mr. Novia offered the job to Ms. Cork and she accepted. *Id*. at 9.  She understood that the Nat Cat Manager's job was an at-will position. *Id*.   There was no contract of employment,

written or oral, with ExecuStay, and no one at ExecuStay promised Ms. Cork that she would be guaranteed employment for any specific length of time. *Id.*

Plaintiff began working in the Nat Cat Manager position on June 10, 2002, and she received a base salary of $52,000 per year.  *Id.*  Additionally, Plaintiff was placed on a commission structure whereby she could earn a commission of four percent on the sales that she booked.  *Id.* at 10. However, during her tenure with ExecuStay, she failed to book a single housing unit, and she did not obtain any national catastrophe preferred vendor contracts.  *Id.* at 12.

When he created the Nat Cat Manager position, Mr. Novia did not realize that the market for national catastrophe sales was event driven. (Doc. 31, p. 20.)  In September 2002, he concluded that the Nat Cat Manager position was not working out, and he made the decision to eliminate the job, restructure the operations, and reassign the national catastrophe function to others already employed with ExecuStay.  (Doc. 23, p. 12-13.) On September 11, 2002, Mr. Novia informed Ms. Cork that the Nat Cat

Manager position was being eliminated and that she would be terminated effective September 25.  *Id*. at 13.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

Defendants allege that summary judgment is due to be granted on Plaintiff's claims because they are barred by the applicable statute of limitations. (Doc. 23, p. 1.)  Even if some of Plaintiff's claims are able to survive the limitations bar, Defendants argue that they still cannot survive summary judgement because she has not proven the merits of those claims. *Id*.

A.      Statute of Limitations.

Defendants begin their brief by arguing that the statute of limitations bars Plaintiff's claims.  (Doc. 23, p. 14.)  Ms. Cork alleges that Execustay, through Joe Novia, fraudulently induced her to leave her job and accept the Nat Cat Manager position by making various misrepresentations and suppressing material facts during her May 20, 2002, job interview.  (Doc. 1.) The Alabama statute of limitations for claims based upon the fraudulent inducement of employment is two years.  Ala. Code § 6-2-38(l) (1993).  *See, e.g., Liberty Nat'l Life Ins. Co. v. Parker*, 703 So. 2d 307, 308 (Ala. 1997) (citing Ala. Code § 6-2-38(l)) ("The statute of limitations for fraud actions generally allows two years for filing a claim."); *Kelly v. Connecticut Mutual Life Ins. Co.*, 628 So. 2d 454, 460 (Ala. 1993) (stating that a claim for fraud is subject to the two-year statute of limitations set out in Ala. Code § 6-2-38(l)).  However, the two-year limitations period does not accrue until the plaintiff has "actual knowledge of facts that would have put a reasonable person on notice of the fraud."  *Parker*, 703 So. 2d at 308 (citing Ala. Code § 6-2-3 (1993); *see also Hicks v. Globe Life Ins. Co.*, 584 So. 2d 458, 463 (Ala. 1991)).  "Under Alabama law the statute of limitations for fraud

commences once the fraud is readily discoverable or the potential plaintiff is on notice that a fraud may have been perpetrated." *Kelly v. A.L. Williams Corp.*, 669 F. Supp. 1058, 1062 (N.D. Ala. 1986).

Generally, the question of when the plaintiff discovered or should have discovered the fraud is one for the jury, but the question is "removed from the purview of the jury" and decided as a matter of law in cases where the plaintiff had actual knowledge of facts that would have put a reasonable person on notice of the fraud. *See Ex Parte Alabama Farmers Cooperative, Inc.*, 911 So. 2d 696, 702 (Ala. 2004) (quoting *Barlow v. Liberty National Life Insurance Co.*, 708 So. 2d 168, 173-74 (Ala. Civ. App. 1997)); *Kelly*, 628 So. 2d at 458. Once a defendant makes a *prima facie* showing that there is no genuine issue of material fact and that the limitations period has expired, the burden shifts to the plaintiff to produce substantial evidence creating a genuine issue of material fact or indicating that the defendant is not entitled to a judgment as a matter of law. *Kelly*, 628 So. 2d at 458 (citing Ala. Code § 12-21-12; Ala. R. Civ. P. 56(c)). According to the Alabama Supreme Court, the limitations period begins to run when a plaintiff becomes privy to facts which would "provoke inquiry in the mind of a

[person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Auto-Owners Ins. Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001) (internal quotations and citations omitted); *see also Jefferson County Truck Growers Ass'n v. Tanner*, 341 So. 2d 485, 488 (Ala. 1977) ("Fraud is deemed to have been discovered when it ought to have been discovered.  It is sufficient to begin the running of the statute of limitations that facts were known which would have put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.")

Ms. Cork filed her lawsuit on September 10, 2004, in the Circuit Court of Tuscaloosa County, Alabama.  (Doc. 1.)  Defendants allege that summary judgment is due in this case because Plaintiff has admitted that, by August 2002 or earlier, she had actual knowledge of the fraud allegedly committed by Joe Novia.  (Doc. 23, p. 18.)  Ms. Cork stated in her deposition that Mr. Novia[2] fraudulently induced her to leave her employment with State Farm because she relied, to her detriment, on the following: 1) misrepresentation

---

[2]Ms. Cork testified in her deposition that only Mr. Novia made fraudulent misrepresentations to her regarding the Nat Cat Manager position.  (Doc. 21, Pl.'s Depo., pp. 267-69.)

by Mr. Novia that Execustay already had preferred vendor contracts for national catastrophes with two insurance carriers, AllState and Traveler's, under which she would immediately earn a commission; 2) misrepresentation by Mr. Novia that a preferred vendor contract with Hartford Insurance Company was a "done deal"; 3) misrepresentation by Mr. Novia that he would come to Alabama to help Ms. Cork put together a marketing presentation to pursue vendor contracts at other insurance companies and that he or Kelly Johnson would accompany her on the first couple of presentations; 4) an alleged promise by Mr. Novia that Ms. Cork would easily earn a six figure salary within two years; 5) misrepresentation by Mr. Novia that the company was the "biggest and best" in the industry and that business was "growing"; 6) Mr. Novia's failure to tell Ms. Cork about the problem with a customer in Tennessee which ExecuStay's Account Executive there feared could result in the loss of 65% of its business in that state; and 7) Mr. Novia's failure to tell Plaintiff that the financial outlook of ExecuStay and Marriott was such that it could affect the stability and permanence of the Nat Cat Manager's position.  (Doc. 21, Pl.'s Depo., pp. 231-32, 239-41, 245-47, 249, 258, 278-81, 293, 297, 320-25.)

Defendants contend that Ms. Cork had actual knowledge of the alleged fraud perpetrated by Mr. Novia prior to August 2002.  First, Plaintiff has admitted that by the end of June or the first of July 2002, she discovered that ExecuStay did not have preferred vendor contracts with AllState and Traveler's.  (Doc. 21, Pl.'s Depo., pp. 286-87.)  Plaintiff also testified that she learned that the contract with Hartford was not a "done deal" within the same time frame.[3]  *Id.* at 286-88.  By June 2002, Ms. Cork discovered that she would not be getting any assistance preparing the preferred vendor contract presentations, and she knew by July 2002, that Ms. Johnson and Mr. Novia would not be flying to Birmingham to help her with her first presentations because she had already given her first one without them.  *Id.* at 288-89.  Finally, Ms. Cork has admitted that by August 19, 2002, she knew that Mr. Novia failed to disclose to her that a customer in Tennessee had a

---

[3]Moreover, to establish a claim based upon the alleged statement that the contract with Hartford was a "done deal," Plaintiff would have to establish the elements of a claim for misrepresentation, or fraud.  One such element is that the statement was made "willfully to deceive, recklessly, without knowledge, or mistakenly. . . ." *Brushwitz v. Ezell*, 757 So. 2d 423, 429 (Ala. 2000).  Plaintiff has presented no evidence that Mr. Novia knew at the time of the May 20, 2002, interview that the contract with Hartford was not a "done deal" and that he made the statement with an intent to deceive Ms. Cork.

problem that could result in the loss of 65% of ExecuStay's business in that state.  (Doc. 22, Pl.'s Depo., pp. 439-40.)

Of the seven misrepresentations Plaintiff alleges in her deposition testimony, she had actual knowledge that at least four of them were false or fraudulent prior to September 10, 2002.  The Court must determine whether the knowledge that these statements were false would lead a person of "reasonable prudence" to investigate into whether a fraud had been perpetrated.  *See Abston*, 822 So. 2d at 1195 .  If a reasonable person would have uncovered facts which would support a claim of fraud prior to September 10, 2002, Ms. Cork's claims are due to be barred under the Alabama statute of limitations.  *See Tanner*, 341 So. 2d 485 at 488.  It is not necessary that a plaintiff have actual knowledge that all of the alleged misrepresentations were false before the statute of limitations begins to accrue.  *See, e.g., Kelly*, 669 F. Supp. at 1062; *Alabama Farmers Cooperative, Inc.*, 911 So. 2d at 702*; Abston*, 822 So. 2d at 1195.

Of the alleged misrepresentations made by Mr. Novia to induce Plaintiff to leave her employment with State Farm and join ExecuStay as their Nat Cat Manager, there are only three that she has not admitted to

having actual knowledge of their falsity by August 2002: 1) the promise that she would easily be earning a six figure salary within two years; 2) the alleged misrepresentation that the company was the "biggest and the best" in the industry and that business was "growing;" and 3) Mr. Novia's alleged failure to tell her that Defendants' overall financial outlook was such that it could affect the stability and permanence of the Nat Cat Manager position.  Defendants contend that even if these statements "are analyzed as separate 'mini-claims,' they are barred by the statute of limitations because Plaintiff was clearly privy to facts that would have provoked an inquiry in a reasonable person, which if followed up, would have led to the discovery of the fraud."  (Doc. 23, pp. 21-22.)  Defendants first point to the fact that Plaintiff actually knew, by August 2002 or earlier, that Mr. Novia made multiple misrepresentations of fact, which would have led a reasonable person to be suspicious of Mr. Novia's motives and to question whether he made other misrepresentations or suppressed other facts.  *Id.* at 22.  Also, by August 2002, Plaintiff had not made a single sale, obtained a single preferred vender contract, or earned a single dollar in commission. Defendants believe that this would have led a reasonable person to suspect

that the Nat Cat job and Plaintiff's prospects for success in it were not what she was led to expect. *Id.* She had also learned that she would not be getting the support from Mr. Novia and Ms. Johnson that she expected to receive. *Id.* These facts taken together, according to Defendants, should have prompted Ms. Cork, as a reasonable person, to inquire by August 2002, if not earlier, as to whether Mr. Novia made other misrepresentations or false statements of fact regarding the Nat Cat position. *Id.* at 22-23.

Defendants have made a *prima facie* showing that the limitations period for Plaintiff's claims has expired. *See, e.g., Kelly*, 628 So. 2d at 458. The burden thus shifts to Ms. Cork to produce sufficient evidence to create a genuine issue of material fact, or indicate that Defendants are not entitled to a judgment as a matter of law, as to whether her claims survive the statute of limitations. *Id.* Plaintiff begins her response by stating that it is a "well settled [legal] principle [] that the question of when a plaintiff should have discovered a fraud is *almost* always a fact issue to be resolved by the jury." (Doc. 31, p. 21 (emphasis added).) Even though she provides

no authority for this statement,[4] it is not inconsistent with the Court's interpretation of the law as stated in the paragraphs above.  It remains the case, however, that the question is removed from the jury and decided as a matter of law in cases where the plaintiff had actual knowledge of facts that would have put a reasonable person on notice of the alleged fraud. *See, e.g., Ex Parte Alabama Farmers Cooperative, Inc.*, 911 So. 2d at 702.

Ms. Cork goes on to state that she testified that she had no concerns about the security of her job until the day she was fired.[5]  (Doc. 31, p. 22.) She avers that Defendants gave her additional responsibilities just a few weeks before she was terminated and that Mr. Novia agreed that her slow start was the result of a lack of catastrophic events during the summer of 2002.  *Id*.  Plaintiff argues in her brief that "[a] reasonable person in Cork's position could have concluded from these facts that no fraud had been perpetrated and that defendants' [sic] representations about the company and her future with it were still true."  *Id*.

---

[4]Plaintiff's brief does not contain any citation to legal authority to support this argument.

[5]Plaintiff does not provide any citations to the record within the argument portion of her brief.  The only citations to evidence appear in the section of her brief outlining the facts of the case.

Page 17 of  34

Plaintiff opines that "Alabama law recognizes that fraud can be based on the totality of the circumstances," but again, she provides no case law or statutory support for her proposition.  (Doc. 31, p. 22.)  The brief states that "Cork testified that there was not any one fact that would have kept her from accepting defendants' [sic] job offer."  *Id.*  Therefore, she claims that she was not able to "put everything together" until after she had been fired.  *Id.*  Plaintiff admits to having actual knowledge of several of the misrepresentations prior to or during August 2002.  The test is not whether the plaintiff had actual knowledge of *all* the facts that constituted the alleged fraud but whether she had actual knowledge of facts that would put a reasonable person on notice of the fraud.  *See, e.g., Ex Parte Alabama Farmers Cooperative, Inc.*, 911 So. 2d at 702; *Abston*, 822 So. 2d at 1195.

Ms. Cork's final response to Defendants' statute of limitations argument is that they have not pointed to any damage suffered by Ms. Cork prior to September 11, 2002, the day she was fired.  (Doc. 31, p. 23.)  Plaintiff explains that until that date, she "liked her job, worked hard at it, and felt that her boss understood that her slow start was due to circumstances beyond her control."  *Id.*  She again states that she had no

reason to believe that she was a victim of fraud.  *Id*.   It was the consequences of her termination that Ms. Cork claims prompted her investigation that led to the realization that  she had been defrauded.  *Id*. However, Ms. Cork has once again misunderstood the standard to be applied in this case.  The standard is not subjective.  Whether Ms. Cork realized that she may have been defrauded prior to her termination is not the relevant inquiry under Alabama law.  As the Court has already noted, the standard to be applied is objective.  The Court must determine whether the actual knowledge possessed by Plaintiff would have put a reasonable person on notice that a fraud had been perpetrated.  *See, e.g., Ex Parte Alabama Farmers Cooperative, Inc.*, 911 So. 2d at 702.

The Court agrees with Defendants that the fact that Ms. Cork had actual knowledge of most of the alleged misrepresentations and statements of fact by August 2002 weighs heavily on whether she should have inquired into the veracity of the rest of the statements.  Plaintiff is a college graduate with a master's degree in social work from the University of Alabama, and she has over twelve years of experience at State Farm, where she worked with various temporary housing companies.  (Doc. 21, Pl.'s Dep.,

pp. 29, 35-36, 40, 47-52.)  Plaintiff, in preparation for this case, produced several documents which she contends support her claim that Mr. Novia misrepresented and suppressed facts about the financial health and outlook of Defendants.   Those documents include: Marriott's 2001 annual report from February 2002; two 10-Q's filed with the SEC for the periods ending March 22, 2002, and June 14, 2002; and two analyst reports on Marriott from Spring 2002.   (*See* Doc. 23, Pl.'s Dep., Exhibit 7.)   Ms. Cork has acknowledged that these documents are all public records to which she had access prior to September 10, 2002.  (Doc. 22, Pl.'s Dep., p. 427.)  If she would have looked for these documents she could have found them prior to or during her employment with ExecuStay.   Plaintiff then could have ascertained whether Mr. Novia's statements that the company was the "biggest and best" and that the industry was "growing" were misleading.

Ms. Cork was also in a position to know that she would probably not be earning a six figure salary within two years.   Her base salary was only $52,000.00.  Any additional earnings would have to come from commissions on sales that she booked.  As of August 2002, Plaintiff had not booked a single sale; therefore, she had not earned any commission.  As stated above,

Ms. Cork knew by August 2002 that she had been misled regarding the preferred vendor contracts with AllState, Traveler's, and Hartford Insurance Company.  She knew that she was not going to get the support that she was led to believe would be available from Mr. Novia and Ms. Johnson.  Given the facts of this case, it is difficult for the Court to understand how Plaintiff would not have concluded, by the end of August 2002, that she would not be earning a six-figure salary or that the company was perhaps not the "biggest and best" and "growing."

For these reasons, the Court finds that Plaintiff has not satisfied her burden of producing substantial evidence which creates a genuine issue of material fact as to whether her claims are barred by the statute of limitations.  Because Plaintiff has admitted to having actual knowledge that most of Mr. Novia's alleged misrepresentations were false and such knowledge would have "invok[ed] inquiry in the mind of a [person] of reasonable prudence," the Court finds as a matter of law that the limitations period for Plaintiff's claims accrued prior to September 10, 2002. *Abston*, 822 So. 2d at 1195.  Therefore, Plaintiff's claims are barred by the

statute of limitations and Defendants' motion for summary judgment is due to be granted.

B.    Merits of Plaintiff's Claims.

Even if a reasonable person would not have been on notice of the alleged misrepresentations made by Mr. Novia by virtue of having actual knowledge that most of his statements were false, Defendants would still be entitled to summary judgment on all of Plaintiff's allegations.  As stated in the preceding section, there are only three statements allegedly made by Mr. Novia that Plaintiff has not admitted to having actual knowledge of their falsity by August 2002: 1) the promise that she would easily be earning a six figure salary within two years; 2) the assertion that the company was the "biggest and the best" and that the industry was "growing;" and 3) Mr. Novia's alleged failure to tell Ms. Cork that the company's overall financial outlook was such that it could affect the stability and permanence of the new position.  Even if the statute of limitations does not bar claims based upon these three alleged misrepresentations and suppressions of fact, Defendants are entitled to summary judgment because Plaintiff cannot prevail on the merits of those claims.

1.    "Six-Figure Salary."

Plaintiff alleges that she was told by Mr. Novia that she would easily earn a six-figure salary within two years.  (Doc. 21, Pl.'s Depo., p. 249.) Defendants assert that this is properly characterized as a claim of promissory fraud.  (Doc. 23, p. 27.)  They interpret the statement as a "promise to take action in the future" and cite to the case of *Wade v. Chase Manhattan Mortgage Co.*, 994 F. Supp. 1369, 1379 (N.D. Ala. 1997), for support.  To prove a claim of promissory fraud, a plaintiff must establish: 1) that the defendant made a false representation of material fact; 2) that the false representation was relied upon by the plaintiff; 3) that the plaintiff was damaged as a proximate result of the reliance; 4) that the representation was made with a present intent to deceive; and 5) that when the representation was made the defendant intended not to perform in accordance with it.  *Shaddix v. United Ins. Co. of America*, 678 So. 2d 1097, 1099 (Ala. 1995) (quoting *Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 311 (Ala. 1992), *cert. denied*, 507 U.S. 1031 (1993)).  Defendants correctly state that the "law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to

an event to occur in the future" by requiring the plaintiff to establish that "the promisor had no intention of carrying out the promises, but rather had a present intent to deceive" at the time the alleged promises were made. *National Security Ins. Co. v. Donaldson*, 664 So. 2d 871, 876 (Ala. 1995); *Hearing Systems, Inc. v. Chandler*, 512 So. 2d 84, 87 (Ala. 1987).

Ms. Cork disagrees with Defendants' interpretation of her claim as one for promissory fraud.  (Doc. 31, p. 24.)  Instead, she asserts that Mr. Novia's statements were "misrepresentations of existing facts," which means that "there is no requirement for Cork to prove intent in order to prevail on her claim." *Id.*  However, Plaintiff misinterprets her own testimony.  She stated that Mr. Novia told her "that [she] would easily make a six figure salary within two years with my base and my commission."  (Doc. 21, Pl.'s Depo., p. 249.)  When asked if that was contingent upon her generating four to six million dollars in sales she responded "Right."  *Id.*  Mr. Novia was not basing his prediction of her salary range on conditions that existed at the time of

the interview.  Therefore, Plaintiff's claim must be for promissory fraud and

not for misrepresenting "existing facts."[6]

Mr. Novia's alleged statement was not a representation of fact.  It was

simply a prediction of what Plaintiff's salary could be if she generated sales

within the four to six million dollar range.  Plaintiff was aware of the fact

that her base salary would be $52,000 per year and that any additional

income would be in the form of commissions based upon sales generated.

(*See* Doc. 21, Pl.'s Depo., p. 249.)  Ms. Cork testified that Mr. Novia told her

that "it would be very easy to make a six" figure salary.  *Id.*  She clearly

stated that Mr. Novia informed her that she would earn a four percent

commission on everything that she booked and that "he was *predicting or*

*hoping for*. . . four to six million dollars in sales the first year and then in

two years ten to twenty million in sales. . . ."  *Id.* (emphasis added)  If

Plaintiff had reached these predictions then her four percent commission

would have easily provided her with a six figure salary.  For these reasons,

---

[6]Even if Plaintiff's claim should be characterized as one for "misrepresentation of existing facts," summary judgment would be due to be granted to Defendants because Plaintiff cannot show that Mr. Novia misrepresented a material fact, as described more fully in the following paragraphs.

the Court is of the opinion that Mr. Novia did not make a false representation of a material fact.  *See Wade*, 994 F. Supp. at 1381 (holding that "[t]he now existent fact that [the employer's] predictions were unfulfilled for whatever reason, does not make these predictions a fact at the time they were rendered.").

Summary judgment is also due to be granted on Ms. Cork's claim based upon Mr. Novia's misrepresentation of her salary because she has not presented evidence sufficient to establish that there is a genuine issue of fact as to whether Mr. Novia made the statement with a present intent to deceive and whether Defendants intended to not perform in accordance with the statement at the time that it was allegedly made.[7]  There is no

---

[7]Plaintiff incorrectly states in her brief that "[a]s the moving party, defendants have the obligation to prove the absence of evidence supporting Cork's claim."  (Doc. 31, p. 24.)  She also opines that "[b]ecause defendants have not properly supported their motion, Cork has *no* obligation to oppose the motion with any evidence of an intent to deceive."  *Id.* at 25 (emphasis added).  Defendants did argue that there is evidence which suggests that Mr. Novia did not intend to deceive Plaintiff.  (*See* Doc. 23, p. 32.)  Defendants point to emails sent by Mr. Novia to his superiors which indicate his enthusiasm for both the position itself and Ms. Cork as a candidate for it.  *Id.*  Rule 56(e) of the Federal Rules of Civil Procedure requires:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party

evidence that Mr. Novia meant to do anything other than predict what Ms. Cork's salary would be if she reached certain sales goals.  In fact, the evidence supports the opposite contention: that Mr. Novia believed that the Nat Cat Manager position would be profitable and that Plaintiff could earn a high salary.  In an email to his superiors, Mr. Novia stated that "[w]e need to get the CAT person going as that would be gravy monthly."  (Doc. 26, Novia Depo., Exhibit 1.)  No evidence has been presented to the Court that would suggest that Mr. Novia did not believe that the NAT CAT position would be able to make money and that the individual in the position would not be able to earn a high commission.

_____

does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Fed. R. Civ. P. 56(e).  Once the moving party has supported its motion with evidence as provided under the rule, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a *genuine issue for trial*."  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))) (internal quotations omitted) (emphasis in original).  A nonmoving party establishes a genuine issue of material fact if it has produced evidence "such that a reasonable factfinder could return a verdict in its favor."  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  Therefore, Ms. Cork does have an "obligation to oppose the motion with. . . evidence of an intent to deceive" because Defendants have presented evidence which suggests that Mr. Novia had no such intention.

Therefore, the Court finds that Defendants' motion for summary judgment is due to be granted on Plaintiff's allegation that Mr. Novia misrepresented her future salary during the May 20, 2002, interview.

> 2.   ExecuStay is the "Biggest and Best" and Business was "Growing."

Ms. Cork alleges that Joe Novia told her that ExecuStay was the "biggest and best" temporary housing company and that the industry was "growing." (Doc. 21, Pl.'s Depo., pp. 258, 293, 297.) Defendants aver that even if Mr. Novia made such a claim, it cannot support an action for misrepresentation.   (Doc. 23, p. 38.)   In order to prove a claim for misrepresentation, or fraud, in Alabama, a plaintiff must show that the defendant: 1) made a false representation; 2) of a material existing fact; 3) made willfully to deceive, recklessly, without knowledge, or mistakenly; 4) that is justifiably relied upon; and 5) that damages proximately resulted from the reliance.  *See Brushwitz v. Ezell,* 757 So. 2d 423, 429 (Ala. 2000); *Hale v. Vencor Nursing Centers East, LLC.,* 64 F. Supp. 2d 1272, 1280 (S.D. Ala. 1999) (quoting *St. Clair Fed. Sav. Bank v. Rozelle,* 653 So. 2d 986, 988 (Ala. 1995)).

Defendants contend that Plaintiff cannot meet her initial burden of showing that Mr. Novia made a false representation because statements such as "biggest and best" and "growing" are properly viewed as statements "of opinion amounting to nothing more than 'puffery' or predictions as to events to occur in the future." *Wade*, 994 F. Supp. at 1381.  (Doc. 23, pp. 38-39.) Therefore, according to Defendants the statements are not representations of a "material existing fact." *Id*.  In *Wade*, the District Court held that statements by the employer regarding the company's products and benefits made at a dinner to recruit the plaintiffs could not be considered anything other than a "sales pitch" or recruiting presentation, and, therefore, were insufficient to support the plaintiff's claim for misrepresentation. *Id*.  The *Wade* decision also notes that Alabama courts have found that statements by salespersons that a car was "fine," "top-of-the-line," "luxury," and "smooth-riding" are opinion or puffery and not existing facts. *Id*. (citing *Hughes v. Hertz Corp.*, 670 So. 2d 882, 885 (Ala. 1995); *Mason v. Chrysler Corp.*, 653 So. 2d 951 (Ala. 1995); *McGowan v. Chrysler Corp.*, 631 So. 2d 842 (Ala. 1993)).  Also, a statement by a real estate agent that a house is "better than other houses in the neighborhood" is an opinion and it would

not support a claim for fraud.  *Id.* (citing *Cruse v. Coldwell Banker*, 667 So.

2d 714, 715 (Ala. 1995).  Statements of opinion, or mere puffery, cannot, as

a matter of law, support a plaintiff's claim for fraud.  *See Finscher v.

Robinson Bros. Lincoln-Mercury, Inc.*, 583 So. 2d 256, 259 (Ala. 1991).

    In this case, Mr. Novia's statements are akin to saying that "this is the

best house in the neighborhood."  He simply stated his opinion that

ExecuStay was the "biggest and best" in the temporary housing industry and

that the industry was "growing."  (*See* Doc. 21, Pl.'s Depo., pp. 258 & 297.)

Plaintiff's only response to Defendants' argument is that the cases cited in

Defendants' brief "confine [puffing] to sales pitches."  (Doc. 31, p. 26.)

This is not the case.  Some of the authority cited by Defendants concerns

sales transactions, but the decisions do not "confine" their holdings to

"sales pitches."  However, the hiring of new employees is not unlike a sales

pitch.  It is understandable that an individual charged with hiring new staff

members would want to portray the company in the best possible light.  One

way to do that would be to try to convince the recruit that the company is

the best in its industry and that there are opportunities for advancement

within the organization because it is growing.  Therefore, the Court finds

that Mr. Novia's alleged statements that ExecuStay is the "biggest and best" and that the industry is "growing" are mere opinions and cannot form the basis of a claim for fraud.

        3.    Stability of the Nat Cat Manager Position.

Finally, Ms. Cork alleges that Joe Novia failed to tell her that the financial outlook of ExecuStay and Marriott was such that it could affect the stability and permanence of the Nat Cat Manager position. (*See* Doc. 21, Pl.'s Depo., pp. 320-25.) When pressed as to what exactly Mr. Novia should have told her, Plaintiff testified that he should have disclosed the financial status of Marriott and ExecuStay and he should have told her that her job was not as stable as he led her to believe. *Id.* at 323. Defendants characterize this as a claim of fraudulent suppression, which requires the plaintiff to establish: 1) that the defendant had a duty to disclose; 2) that the defendant suppressed an existing, material fact; 3) that the defendant had actual knowledge of the fact and its materiality; 4) that the defendant's suppression of the fact induced the plaintiff to act or refrain from acting; and 5) that the plaintiff suffered actual damage as a proximate result thereof. *See, e.g., Johnson v. Sorenson*, 914 So. 2d 830, 837 (Ala. 2005);

*Hardy v. Blue Cross & Blue Shield of Ala.*, 585 So. 2d 29, 32 (Ala. 1991). Under Alabama law, a plaintiff faced with a motion for summary judgment on a fraudulent suppression claim must offer substantial evidence as to each of those elements.  *See Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995).

Defendants attack Ms. Cork's claim by first stating that as of May 20, 2002, the date of the interview, there is no evidence that there was anything unfavorable about Defendants' financial outlook that had any connection to Plaintiff's future job security. (Doc. 23, p. 34.) Furthermore, there is no evidence that Joe Novia, or anyone else employed by Defendants, knew of anything negative about the financial outlook of the company which they believed would adversely affect the Nat Cat position. *Id.*  In fact, Defendants point out that Joe Novia's proposal for the Nat Cat job which he sent to his superiors forecasts that the job would generate an additional $4.2 million in revenue and $275,000 in additional earnings before taxes.  (*See* Doc. 26, Novia Depo., pp. 80-89.)  Even if Mr. Novia was aware of some negative information regarding the financial outlook of Execustay or Marriott, Defendants contend that there still would not be a duty of

disclosure on the part of Mr. Novia. (Doc. 23, p. 35.) They assert that there is no "demonstrable tie between the financial information allegedly suppressed and the prospective job. . . ." *Id.* at 35-36.

Plaintiff responds by asserting that Joe Novia sent emails immediately prior to hiring Ms. Cork, in which he expressed concerns about the "very survival of the company."[8] (Doc. 31, p. 25.) She also notes that Mr. Novia sent emails concerning the failure of one division of ExecuStay to achieve its budget goals for the year and that the company was at risk of a shortfall in its budget. However, Defendants have responded by identifying the troubled division as Corporate Housing Solutions. (Doc. 33, p. 18.) Plaintiff was employed by the ExecuStay IHS division, rather than CHS, and there is no evidence before the Court that there was anything unfavorable about the financial outlook of the IHS division at the time of Plaintiff's interview.

In addition to the foregoing, Plaintiff has not even attempted to establish that Defendants had a duty to disclose the information in question. Therefore, Ms. Cork has failed to offer substantial evidence as to each of the

---

[8]Plaintiff does not provide a citation to the evidence for this assertion.

elements of her claim for fraudulent suppression as required by Alabama law. *See Mason*, 653 So. 2d at 954.

V.     Conclusion.

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be granted in all respects.   A separate order in conformity with this opinion will be entered.

Done this <u>27th</u> day of <u>February 2006</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153